UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:09CV-54-M**

**COMMODORE FACTORS CORP.**                                                                 **PLAINTIFF**

**v.**

**PITTSBURGH TANK & TOWER CO., INC.**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by the defendant, Pittsburgh Tank & Tower Co., Inc. ("Pittsburgh Tank"), to dismiss [DN 5]. Fully briefed, this motion is ripe for decision.

### I. BACKGROUND

The plaintiff, Commodore Factors Corp. ("Commodore"), was granted a security interest in the accounts receivable of a non-party, Reelan Industries, Inc. ("Reelan"). In addition, Reelan assigned to Commodore all of its accounts for purposes of collection including an account with Pittsburgh Tank. Commodore alleges that, pursuant to a contract, Reelan provided labor and materials to Pittsburgh Tank for various construction projects. It further alleges that Pittsburgh Tank defaulted on the contract by failing to pay Reelan for its labor and materials. Accordingly, Commodore instituted this action against Pittsburgh Tank seeking money damages for breach of contract.[1] Pittsburgh Tank has moved to dismiss this action pursuant to a contractual forum selection clause and pursuant to the common law doctrine of *forum non conveniens*.

### II. DISCUSSION

The contract in question is composed of two documents. The first is a Master Subcontract

---

[1] According to Pittsburgh Tank, Reelan has also filed an action in Henderson County Circuit Court seeking money damages pursuant to the same contract.

Agreement (MSA) between Pittsburgh Tank, the contractor, and Thermacon Industries, Inc., the subcontractor. Under a section entitled "Special Provisions," the MSA provides:

> The laws of the State of Kentucky shall govern this [MSA] and any claims arising under it . . . . [E]xclusive venue shall be in Henderson County, Kentucky, unless stipulated otherwise by the Contractor (at its sole discretion).

(MSA § 12.) The second document, which is attached to the MSA and entitled Attachment A, is an agreement between Pittsburgh Tank, the contractor, and Reelan Industries, the subcontractor. The MSA makes various references to Attachment A. Notably, it provides that "[t]his [MSA] and Attachment A constitutes (sic) the total and final agreement between the parties herein." (Id.) The only reference that Attachment A makes to the MSA is as follows: "The above-described work shall comply with all requirements of the Contractor's agreement with its Customer and the [MSA]."

### A. FORUM SELECTION CLAUSE

Pittsburgh Tank argues that this matter should be dismissed because it is not currently pending in a Henderson County court as required by the forum selection clause. Commodore disagrees, and argues that the forum selection clause does not apply because Reelan never signed the MSA containing the forum selection clause.

Whether Pittsburgh Tank and Reelan agreed to litigate their contractual disputes in Henderson County depends upon whether the forum selection clause of the MSA was incorporated by reference into Attachment A.[2] This, in turn, requires the Court " to ascertain and to effectuate the intention of the parties to the contract from the contract itself." Logan Fabricom, Inc. v. AOP P'ship LLP, No. 2004-CA-002410-MR, 2006 WL 3759412, at *2 (Ky. Ct. App. Dec. 22, 2006). In

---

[2] The interpretation of a contract is a question of law for the Court to decide. Equitania Ins. Co. v. Slone & Garrett, P.S.C., 191 S.W.3d 552, 556 (Ky. 2006).

the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence. Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 106 (Ky. 2003). Here, a finding that Reelan did not sign the MSA is not dispositive of the issue. If the terms of the MSA were incorporated by reference into Attachment A, then the terms of the MSA, including the forum selection clause, would be just as binding upon Reelan as if it had signed the MSA. Exch. Mut. Ins. Co. v. Haskell Co., 742 F.2d 274, 276 (6th Cir. 1994) ("a party does not have to be a signatory to the contract when the contract is specifically incorporated by reference" by another contract to which the party is a signatory) (citation omitted). In other words, "the incorporation of terms from a first contract into a second can render the terms of the first contract enforceable against a party to the second contract who was not a party to the first." Prime Contracting, Inc. v. Wal-Mart Stores, Inc., No. 06-383-JBC, 2008 WL 2859014, at *2 (E.D. Ky. July 22, 2008). Language in the second contract is sufficient to incorporate the terms and conditions of the first, so long as the language of incorporation is clear and specific. See Buck Run Baptist Chruch, Inc. v. Cumberland Sur. Ins. Co., 983 S.W.2d 501, 503 (Ky. 1998).

The language at issue in Attachment A–that "[t]he . . . *work* shall comply with all requirements of the Contractor's agreement with it's Customer *and the [MSA]*"–is not a model of clarity. This language appears to incorporate only the work requirement provisions of the MSA. Noticeably absent from Attachment A, however, is any language that would incorporate the MSA's forum selection clause. For its part, Pittsburgh Tank does not discuss the language of Attachment A. Nor does Pittsburgh Tank point to any language that could be construed as incorporating the MSA's forum selection clause. It merely quotes the forum selection clause contained in the MSA

and assumes that Commodore, as Reelan's assignee, is subject to the clause despite the fact that Reelan is not a party to the MSA. The Indiana Supreme Court analyzed similar language of incorporation in <u>MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.</u>, 802 N.E.2d 901 (Ind. 2004). In <u>MPACT</u>, a general contractor entered into a contract with a client to construct a travel plaza. 802 N.E.2d at 903. The "General Conditions" of the prime contract between the general contractor and its client contained an arbitration provision. <u>Id.</u> The general contractor then entered into contracts with several subcontractors to perform the construction. <u>Id.</u> Each of the subcontracts contained language of incorporation. Specifically, the subcontracts provided:

> Contractor has heretofore entered into a General Contract with . . . Owner . . . which [is] hereby . . . made a part of this subcontract, *as applicable to the work stated therein* and pursuant to this subcontractor's intent to enter into this sub-contractual agreement, *with reference to any and all of said work*.

<u>Id.</u> at 907 (emphasis added). When the subcontractors brought an action for breach of contract against the general contractor in state court, the general contractor moved to compel arbitration. The general contractor argued that the arbitration provision of the prime contract had been incorporated by reference into the subcontracts pursuant to the foregoing language. <u>Id.</u> at 908. The Indiana Supreme Court analyzed the language of incorporation and found that the provision was "about the work to be performed and nothing more." <u>Id.</u> The court concluded that if the parties had intended to bind the subcontractors to arbitration "logic dictates that an incorporation by reference clause clearly apply to the entire contract–or be in a separate section on rights and remedies or at least with contract provisions on liability and indemnification–*rather than with provisions relating to the work*." <u>Id.</u> (emphasis added). The court ultimately concluded that the trial court could not compel arbitration because the subcontractors never agreed to litigate their claims through arbitration.

The Court finds <u>MPACT</u> persuasive. As with the language of incorporation at issue in

MPACT, this Court finds that Attachment A's incorporation language is about the work to be performed and nothing more. Simply put, the language of incorporation is inartfully drafted and does not "clearly and specifically" incorporate the forum selection clause as required by Kentucky law. See Buck Run, 983 S.W.2d at 503. Furthermore, Pittsburgh Tank was the preparer of Attachment A and the MSA "and it is axiomatic that a contract must be construed more strongly against the party who prepared it." Pulliam v. Wiggins, 580 S.W.2d 228, 231 (Ky. Ct. App. 1978) (citing Boyd v. Phillips Petroleum Co., 418 S.W.2d 736, 738 (Ky. 1966)). Because Commodore, as Reelan's assignee, is not bound by the forum selection clause of the MSA, dismissal pursuant to the forum selection clause is inappropriate.

### B. FORUM NON CONVENIENS

The common law doctrine of *forum non conveniens* gives federal courts discretion to dismiss a case "'when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.'" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994)) (internal markings omitted). The "doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad," Am. Dredging, 510 U.S. at 449 n.2, "and perhaps in rare instances where a state or territorial court serves litigational convenience best," Sinochem, 549 U.S. at 430 (citing 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3828 (3d ed. 2007)). In any event, "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." Id. The defendant must

show that there is "an adequate, available alternate forum in which the defendant is amendable to process." Clark v. Bucyrus Int'l, 634 F. Supp. 2d 814, 817-18 (E.D. Ky. 2009) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254-55 n.22 (1981). In addition, the defendant must show that the private[3] and public[4] interests warrant dismissal in favor of the alternative forum. See id.

Here, the defendant has not met this heavy burden. It merely contends that this matter should be dismissed on *forum non conveniens* grounds because Reelan has brought a similar action against Pittsburgh Tank in Kentucky state court. But this is an insufficient reason to dismiss this action on grounds of *forum non conveniens*. "Despite what may appear to result in a duplication of judicial resources, 'the rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" McLaughlin v. United Va. Bank, 955 F.2d 930, 934 (4th Cir. 1992) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)) (internal markings omitted). Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976) (citation omitted).[5]

---

[3] The private interests include "factors such as ease of access to sources of proof, availability of compulsory process to secure attendance of the unwilling, the cost of obtaining the attendance of willing witnesses, and the possibility of viewing the premises if such viewing is appropriate." Clark, 634 F. Supp. 2d at 818 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

[4] The public interests "include considerations such as imposing jury duty upon the people of a community with no relation to the litigation and having localized controversies decided at home." Id.

[5] There are certain "circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration . . . ." See Colo. River, 424 U.S. at 818. The defendant has yet to show the "clearest of justifications [that would] warrant dismissal." Id. at 819. And there are procedural mechanisms, such as Rule 17's real party in interest requirement and Rule 19's requirement for joinder of necessary parties, which should prevent inconsistent obligations and splitting of actions.

## III. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the motion by the defendant, Pittsburgh Tank & Tower Co., Inc., to dismiss [DN 5] is **DENIED**.


cc: Counsel of Record